## S02A1005. ROUSE v. THE STATE.

(571 SE2d 353)

SEARS, Presiding Justice.

The appellant, Ronald Rouse, was convicted of malice murder and of two counts of felony murder[1] stemming from the shooting of Norris Lee. The felony murder convictions were vacated by operation of law,[2] and the trial court sentenced Rouse to life in prison on the malice murder conviction. Rouse has now filed this appeal, contending, among other things, that the trial court gave an improper charge on inferring intent from the use of a deadly weapon, that the evidence is insufficient to support his convictions for either malice murder or felony murder, and that the trial court erred in allowing certain photographs into evidence.[3] We conclude that most of the issues raised by Rouse are without merit, and that, as for one issue raised by Rouse which does have merit, the error that occurred was harmless. Accordingly, we affirm Rouse's conviction for malice murder.

1. The evidence would have authorized a rational trier of fact to find that Rouse conceived and planned an armed robbery of a store; provided a handgun to the person (Torrance Washington) who would enter the store and perform the robbery; drove Washington to the store; told Washington to enter the back door of the store and that a person who worked at the store (Ricky Wilson)[4] would open the door for him; and told Washington that if the store manager, Norris Lee,

---

[1] Aggravated assault and attempted armed robbery were the underlying felonies for the felony murder counts.

[2] *Malcolm v. State*, 269 Ga. 369, 371-372 (4) (434 SE2d 479) (1993).

[3] The crime occurred on April 19, 1995. Rouse was indicted on July 6, 1995, and was found guilty by a jury on July 24, 1997. Rouse obtained new counsel for post-conviction proceedings, and filed a motion for new trial on August 20, 1997. The court reporter completed the certification of the trial transcript on March 5, 2000, and on November 5, 2001, Rouse filed an amended motion for new trial. On December 12, 2001, the trial court denied Rouse's motion for new trial, as amended, and on December 17, 2001, Rouse filed a notice of appeal. The appeal was docketed in this Court on March 26, 2002, and was submitted for decision on briefs on May 20, 2002.

[4] Wilson was tried jointly with Rouse and was found guilty of felony murder.

got out of line, Washington should shoot him. Moreover, the jury would have been authorized to find that although Rouse knew that the store manager would be armed, he told Washington that he would not be; that when Washington entered the store, Lee fired at him; and that Washington fired at Lee, hitting him in the chest and causing his death.

Having reviewed the record in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Rouse guilty of malice murder and felony murder beyond a reasonable doubt.[5]

2. In *Harris v. State*,[6] this Court held that it is error for a trial court to charge the jury that it may infer the intent to kill from the use of a deadly weapon. In the present case, the trial court gave a charge that violated *Harris*, and Rouse contends that because of this charge, both his malice murder and felony murder convictions must be reversed. We disagree. There was overwhelming evidence that Rouse was the mastermind of the plan to rob the store in question, that he provided the gun in question to Washington, and that he told Washington to shoot the store manager if he interfered with the robbery. Under these circumstances, there was overwhelming evidence of Rouse's malice, and, thus, any error in the charge on intent was harmless.[7] Because of this holding, we need not address Rouse's contention that this Court should overrule its cases holding that the "deadly weapon" charge is harmless error in cases involving felony murder.[8]

3. Contrary to Rouse's contention, we conclude that the trial court did not abuse its discretion in denying the motion for mistrial and severance that Rouse made after a colloquy between the prosecutor and his co-defendant's attorney.[9]

---

[5] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Cargill v. State*, 256 Ga. 252, 253 (1) (347 SE2d 559) (1986), in which we addressed a defendant's contention that there was insufficient evidence of intent to kill to support his malice murder conviction, as the evidence showed that his accomplice shot the victim during an armed robbery. We held that the evidence authorized a finding that the defendant was a party to the crime and that it thus did not matter whether the defendant or his accomplice pulled the trigger, as " '[t]he act of one was the act of the other in the commission of the armed robbery and the ensuing death which resulted therefrom.' " Id. at 253, quoting *Strong v. State*, 232 Ga. 294, 298 (206 SE2d 461) (1974).

[6] 273 Ga. 608 (2) (543 SE2d 716) (2001).

[7] *Scott v. State*, 275 Ga. 305 (5) (565 SE2d 810) (2002). See also the discussion of *Cargill v. State*, 256 Ga. at 252-253, in footnote five of this opinion.

[8] For cases in which we have held that the error is harmless in felony murder cases, see *Chapman v. State*, 275 Ga. 314 (3) (565 SE2d 442) (2002); *Dolensek v. State*, 274 Ga. 678 (558 SE2d 713) (2002); *Oliver v. State*, 274 Ga. 539 (2) (554 SE2d 474) (2001).

[9] See *Kidwell v. State*, 264 Ga. 427, 432 (10) (444 SE2d 789) (1994) (a trial court's denial of a motion to sever will only be reversed for an abuse of discretion, and the burden is on the defendant requesting the severance to clearly show prejudice).

4. Rouse contends that the trial court erred in not requiring the State to introduce into evidence a taped interview of Washington that Rouse alleges was inconsistent with three taped interviews of Washington that the State did introduce into evidence. More specifically, it appears that Rouse is contending that if the State wanted to introduce one or more of Washington's statements, OCGA § 24-3-38[10] required the State to offer into evidence all four of Washington's statements. We conclude, however, that even if an error occurred,[11] it was harmless, as Rouse used the transcript of the fourth statement, which was provided to him by the State, to impeach Washington during cross-examination at trial.

5. Rouse contends that the trial court erred in not permitting him to cross-examine Washington with a tape-recorded interview that Washington had with his lawyer. Because the record shows that the taped interview in question was a privileged communication between Washington and his attorney, because Washington refused to waive his attorney-client privilege at Rouse's trial, and because the record is, devoid of any evidence that shows that Washington authorized the release of this tape to anyone,[12] the trial court did not err in ruling that Rouse could not cross-examine Washington with the tape.[13]

6. Rouse contends that the prosecutor impermissibly bolstered the credibility of one of the State's witnesses during her opening statement when she said that she expected the evidence to show that the witness was being truthful. Although it is impermissible for a prosecutor to tell the jury that she personally believes in the veracity of a witness, " 'it is not improper for counsel to urge the jury to draw such a conclusion from the evidence.' "[14] Because the prosecutor

---

[10] OCGA § 24-3-38 provides that "[w]hen an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence."

[11] For a discussion of the meaning of OCGA § 24-3-38, see Milich, Georgia Rules of Evidence, § 6.3 at 54-55 (1995), and *Peacock v. State*, 170 Ga. App. 309, 312 (316 SE2d 864) (1984). For a discussion of the completeness rule under Federal Rule of Evidence 106, see McCormick on Evidence, § 56 at 249-250 (5th ed. 1999).

[12] The record fails to establish conclusively how Rouse came into possession of Washington's tape-recorded interview, but apparently it was inadvertently disclosed by Washington's attorney.

[13] See Milich, Georgia Rules of Evidence, § 21.15, p. 389 (1995) (the privilege is for the benefit of the client; only the client may waive it; and attorney's disclosure of privileged material only waives privilege if client authorized the disclosure); *Moclaire v. State*, 215 Ga. App. 360, 363-364 (451 SE2d 68) (1994) (statements made by a State's witness to his attorney were privileged because the apparent disclosure of them by his attorney was not authorized by the client); *Revera v. State*, 223 Ga. App. 450, 451-452 (477 SE2d 849) (1996) (the privileged nature of a communication between an attorney and client is not lost if attorney inadvertently discloses it).

[14] *Mason v. State*, 274 Ga. 79, 80 (548 SE2d 298) (2001), quoting *Metts v. State*, 270 Ga. 481, 484 (511 SE2d 508) (1999). Accord *Johnson v. State*, 271 Ga. 375, 384 (519 SE2d 221)

couched her opening statement in terms of what she expected the evidence to show concerning this witness, we conclude that she did not impermissibly bolster the credibility of the witness in question.

7. Rouse contends that the trial court erred in admitting into evidence one autopsy photograph of the victim and one photograph of the victim that was taken before autopsy but after emergency medical procedures were performed on the victim. As for the autopsy photograph, it depicted an injury to the victim's left lung that was not apparent before the autopsy incision was made, and the medical examiner used the photograph to assist him in explaining the victim's cause of death. For these reasons, the trial court did not err in admitting the autopsy photograph.[15]

As for the pre-autopsy photograph, it showed tubes in the victim's nose and mouth, as well as sutures of the victim's external wounds, all of which were the result of emergency medical procedures to save the victim's life. Because the medical examiner used the photograph to identify the victim and to demonstrate his external wounds, and because the victim's body was not "meaningfully altered" by the emergency medical efforts, the trial court did not abuse its discretion in admitting the photograph.[16]

8. Approximately a week before the start of Rouse's trial, a State's witness who had given a statement to the police shortly after the crime spoke with an investigator and added a piece of incriminating information that was not in his initial statement. When the witness testified at trial to this additional piece of information, Rouse objected, contending that the State's failure to provide this information to him before trial violated *Brady v. Maryland*.[17] The trial court overruled the objection, and on appeal, Rouse contends that the State's actions violated *Brady*.[18] We disagree for two reasons. First, the witness's new testimony clearly was incriminating, and thus was not covered by *Brady*.[19] Second, *Brady* was not violated because the material in question became available to Rouse during the trial, and he was able to cross-examine the witness regarding the inconsistent statements.[20] For these reasons, this enumeration of error is without merit.

9. Contrary to Rouse's contention, we conclude that the trial

---

(1999).

[15] See *Peterson v. State*, 274 Ga. 165, 171 (549 SE2d 387) (2001).

[16] *Jenkins v. State*, 270 Ga. 607, 609 (512 SE2d 269) (1999).

[17] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[18] We note that Rouse does not contend that the State's failure to notify him of the witness's new statement violated any discovery requests.

[19] *Hartry v. State*, 270 Ga. 596, 600 (512 SE2d 251) (1999).

[20] *Simmons v. State*, 271 Ga. 563, 566 (522 SE2d 451) (1999); *Burgan v. State*, 258 Ga. 512, 513-514 (371 SE2d 854) (1988).

court did not abuse its discretion in denying the motion to withdraw filed by Rouse's counsel, as the motion was filed after a year and a half of extensive pre-trial preparations had been completed, was filed within two months of the scheduled trial date, and was based on a two-sentence note sent by Rouse to his counsel that stated that his services "are no longer required," and as our review of the record shows that Rouse never communicated to the trial court any ground, such as concerns about his counsel's effectiveness, for his counsel's withdrawal.[21] Moreover, under these circumstances, we conclude that the trial court did not err in failing to hold an evidentiary hearing to inquire into the reasons for Rouse's desire to dismiss his counsel.[22]

In this same enumeration of error, Rouse contends that he received ineffective assistance of trial counsel because counsel failed to adequately cross-examine two State's witnesses, Alison Ward and Torrance Washington. To prevail on this ineffectiveness claim, Rouse must show that his counsel's performance was deficient, and that the deficient performance prejudiced Rouse's case to the extent that it is reasonably likely that the outcome of the trial would have been different if not for counsel's errors.[23]

Our review of the record shows that, with the exception of one alleged failure to impeach with regard to Washington, the discrepancies in the testimonies of Ward and Washington were highlighted for the jury through direct examination by the State, cross-examination by Rouse's attorney, and cross-examination by Rouse's co-defendant's attorney. To the extent that Rouse's attorney did not cover the same ground on cross-examination as that covered either by the direct examination of the prosecutor or by the cross-examination of co-defendant's counsel, we conclude that Rouse has failed to show that counsel's performance was deficient. Moreover, as for the one alleged discrepancy in Washington's testimony that was not covered at trial, Rouse contends that this discrepancy stems from testimony that Washington gave at a preliminary hearing. However, this issue was not raised at the hearing on the motion for new trial, and neither the

---

[21] See *Lynd v. State*, 262 Ga. 58, 62 (9) (a) (414 SE2d 5) (1992) ("A defendant's right to counsel may not 'be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.' *United States v. Burton*, 584 F2d 485, 489 (D. C. Cir. 1978)"); *Bryant v. State*, 268 Ga. 616, 617-618 (491 SE2d 320) (1997) (where client makes "vague complaints" about counsel and fails "to support the discharge of counsel by setting forth any justifiable dissatisfaction with counsel, such as conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between counsel and client," the trial court does not abuse its discretion in finding that the attempted discharge of counsel is a dilatory tactic).

[22] See *Heard v. State*, 173 Ga. App. 543, 544-546 (1) (327 SE2d 767) (1985); *Moody v. State*, 244 Ga. App. 214, 216-217 (534 SE2d 912) (2000).

[23] See *Hamilton v. State*, 274 Ga. 582, 587 (13) (555 SE2d 701) (2001).

trial record nor the transcript of the hearing on the motion for new trial contains a transcript of the preliminary hearing. Thus, it is not possible to determine whether Rouse's counsel's performance was deficient or whether the alleged deficiency prejudiced Rouse.[24]

For these reasons, we conclude that this enumeration of error is without merit.

10. Finally, we conclude that there is no merit to Rouse's contention that the trial court erred in allowing the prosecutor to inject personal opinions and lead witnesses throughout the course of the trial and erred in not granting Rouse a mistrial based on the prosecutor's conduct.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 15, 2002.

*John R. Greco,* for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General,* for appellee.

---

[24] See *Columbus v. State,* 270 Ga. 658, 661-662 (513 SE2d 498) (1999); *Goodwin v. Cruz-Padillo,* 265 Ga. 614, 615 (458 SE2d 623) (1995).